IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BENJAMIN ANTHONY JOYNER,   #126531, | ) Civil Action No. 3:10-2149-DCN-JRM |
| Plaintiff, | ) |
| vs. | ) |
| JON OZMINT; | ) |
| ANNIE SELLERS; | ) **REPORT AND RECOMMENDATION** |
| WILLIE L. EAGLETON; | ) |
| DENNIS R. PATTERSON; | ) |
| L. JOHNSON; AND | ) |
| WARDEN PADULA, | ) |
| Defendants. | ) |

Plaintiff filed this action on August 26, 2010.[1] At the time of the alleged incidents, Plaintiff was an inmate at the Evans Correctional Institution ("ECI") and the Lee Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). He is currently incarcerated at LCI. On November 17, 2010, Plaintiff's complaint was amended to add Warden A. Padula (who was not included in the caption of the original complaint, but was named on the second page of the complaint). See Docs. 10 and 17. Defendants filed a motion for summary judgment on November 30, 2010. Plaintiff, because he is proceeding pro se, was advised on December 9, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on January 13, 2011.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972) and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

## DISCUSSION

Plaintiff is serving a life sentence on convictions for assault and battery with intent to kill, grand larceny, criminal conspiracy, criminal sexual conduct, kidnaping, and murder. Defendants'

Ex. A[2] (Inmate Summary). On April 3, 2009, while housed at ECI, Plaintiff was convicted of possession of a cell phone device. Ex. B (Disciplinary Report and Hearing Record). He was sentenced to disciplinary detention for 180 days and the loss of canteen, phone, and visitation privileges for 360 days. Id. On May 19, 2009, three SCDC officers, including Contraband Lieutenant Stonebreaker, performed a shakedown of Plaintiff's cell in Evan's Specialized Management Unit ("SMU") and discovered a Walkman radio and earphones. Ex. C (Incident Report). The radio and earphones were seized as contraband. Stonebreaker states that these items were destroyed per SCDC policy on January 21, 2010. Stonebreaker Aff. (Ex. D), Para. 6.

On September 28, 2009, Plaintiff filed an action in this court alleging that the conviction for possession of a cell phone violated his due process rights. In September 2010, the Honorable David C. Norton, Chief United States District Judge for the District of South Carolina, granted Defendants' motion for summary judgment and dismissed the action with prejudice. See Joyner v. Ozmint, 3:09-cv-2524-DCN-JRM, 2010 WL 3783167 (D.S.C. September 22, 2010).

Plaintiff claims that in approximately March 2010, his case worker advised that his privileges were not going to be reinstated until April 2011. Complaint at 6. On June 3, 2010, Plaintiff filed a grievance (No. 1546-10) complaining that unidentified persons improperly increased the length of the suspension of privileges. Defendants' Ex. E (Grievance No. 1546-10). The grievance was returned unprocessed because Plaintiff failed to file it within fifteen days from the date of the alleged incident. Id. Plaintiff subsequently filed two other grievances containing similar allegations. Each

---

[2]"Defendants' Ex. ___," refers to exhibits to Defendants' motion for summary judgment. "Plaintiff's Ex. ___," refers to exhibits to Plaintiff's memorandum in opposition to summary judgment.

was returned unprocessed on the same basis as above. Defendants' Ex. F (Grievance No. 1752-10) and Ex. G (Grievance No. 1946-10).

Plaintiff alleges that Defendants violated his First and Fourteenth Amendment rights. He claims that Defendants stole his Walkman radio in violation of his due process rights, failed to process his grievances correctly, and retaliated and conspired against him for filing the earlier lawsuit by adding a year to his privilege restrictions and refusing to process his grievances.

Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff did not properly exhaust his administrative remedies for his claims that Defendants added a year to his privilege restrictions; (2) Defendants did not violate Plaintiff's constitutional rights as to the confiscation of his Walkman radio and earphones, their alleged refusal to process grievances, or the addition of a year to his privileges suspension; (3) Defendants are entitled to qualified immunity; (4) Defendants are not liable under a respondeat superior theory;[3] (5) Defendants are entitled to sovereign immunity; and (6) Plaintiff fails to sufficiently identify L. Johnson requiring dismissal for insufficient process.[4]

---

[3]Defendants argue that they cannot be held liable to the extent that Plaintiff attempts to impute respondeat superior liability to them. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

[4]Defendants argue that Plaintiff has not sufficiently named Defendant "L. Johnson" pursuant to the Federal Rules of Civil Procedure which provide that a summons must "state the name and address of...the plaintiff." Fed. R. Civ. P. 4(a)(1). They assert that this Defendant should be dismissed for insufficient process and lack of personal jurisdiction. Plaintiff argues that this should be denied because he "has a U.S. Marshal form for L. Johnson." Plaintiff's Opp. Mem. at 33. Review of the Form USM-285 indicates that a "CM Kelleft" was served. See Doc. 32.

1.      Exhaustion of Administrative Remedies

Defendant argues that this action should be dismissed as to Plaintiff's claim that Defendants added a year to the suspension of his privileges because Plaintiff has not exhausted his available administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. "That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

Plaintiff fails to show that he exhausted his available administrative remedies as to his claim that he was subjected to an additional year of loss of visitation, telephone, and canteen privileges. Defendants provide that Plaintiff did not grieve the alleged wrongful increase to the suspension of his privileges until June 2, 2010, an inmate must grieve an incident within fifteen days of its occurrence, and the grievance was returned unprocessed because it was filed well beyond this

deadline. Defendants' Ex. E. They provide that Plaintiff filed two more grievances, but they were properly returned unprocessed for his failure to comply with the fifteen day deadline. Defendants' Exs. F and G.

    2.    <u>Due Process/Property Claims</u>

Plaintiff alleges that he was denied due process because he was not afforded a due process hearing as to the charge that he possessed contraband (Walkman radio and earphones). He claims that Sgt. Johnson confiscated and stole his brand new Walkman. Complaint at 3. Defendants contend that Plaintiff fails to show that his due process rights were violated because he did not have a protected liberty interest in an item that is contraband. They argue that the Walkman and earphones were contraband and thus were properly seized and destroyed. Defendants further argue that to the extent that Plaintiff alleges an intentional deprivation by Defendants in their individual capacities, such an intentional deprivation neither violates the Due Process clause nor states a claim under § 1983 as Plaintiff was provided with an adequate post-deprivation remedy.

Plaintiff appears to argue that he was allowed to have a Walkman because he was in SMU, but was not in disciplinary detention. More than one month prior to the confiscation of his Walkman, however, Plaintiff was sentenced to 180 days of disciplinary detention. <u>See</u> Defendants' Ex. B (Disciplinary Report and Hearing Record). Thus, it is unclear how Plaintiff can show that he was not in disciplinary detention at the time of the confiscation. Plaintiff also argues that other inmates were allowed a Walkman pursuant to a policy that allowed inmates who had a Walkman prior to their SMU placement to request from a staff member that they retrieve their Walkman out of their inmate

duffle (property) bag.[5] Even if this policy applied to Plaintiff, he has not shown that he requested that his Walkman be retrieved from his duffle bag, that such an action was approved, and/or that it was given to him. Defendants also argue that Plaintiff was not allowed to have a Walkman because it was not on his property inventory list. Plaintiff fails to show that he had a Walkman on his property inventory sheet.

Additionally, Plaintiff has not named as Defendants any of the officers who participated in the confiscation of his Walkman and earphones. The incident report indicates that Sgt. R. Johnson, along with Officer T. Marsico and Lt. Stonebreaker, performed the shakedown in which Plaintiff's Walkman and earphones were confiscated. Defendants' Ex. C (Incident Report). Plaintiff named "L. Johnson" as a defendant in this action, but did not name "R. Johnson," "T. Marsico," and/or "Stonebreaker" as defendant(s).

Further, an intentional deprivation of property by a governmental employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984); see Mora v. City of Gaithersburg, MD, 519 F.3d 216, 230–31 (4th Cir. 2008)(concerning the intentional taking of guns and ammunition from the plaintiff); Bogart v. Chapell, 396 F.3d 548, 561–63 (4th Cir. 2005)(intentional destruction of the

---

[5]Plaintiff submitted a copy of an SCDC policy which provides:
Inmates who possessed a Walkman prior to admission to SMU will not be required to repurchase a Walkman radio. Rather, the inmate's old Walkman radio will be removed from the inmate's duffel bag. Inmates must submit a "Request to Staff Member," SCDC Form 19-11 to the Unit Supervisor for this purpose. If an inmate is reduced to Level 1, the inmate will lose his/her privilege to have the radio for the duration of his/her time in the SMU. The radio will be stored in the inmate's duffel bag and the inmate will not be allowed to have it again until s/he is released from SMU.
Plaintiff's Ex. 4-A.

plaintiff's animals did not violate the due process clause because South Carolina afforded a meaningful post-deprivation remedy for the loss of animals).

A prisoner in South Carolina may bring an action for recovery of personal property against an official who deprives him of property without state authorization. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir.1986) (citing S.C. Code Ann. §§ 15–69–10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)); see also Samuel v. Ozmint, C/A No. 3:07–178–PMD, 2008 WL 512736 at *7 (D.S.C. Feb.25, 2008) (noting that claims related to the taking of personal property are cognizable under South Carolina state law); Greene v. Stonebreaker, C/A No. 9:06–3392–PMD, 2007 WL 2288123 at *6 (D.S.C. Aug.6, 2007) (noting that a person in South Carolina has a remedy for personal property loss through the South Carolina Tort Claims Act).

  3. Processing of Grievances

Plaintiff alleges that Defendants violated his constitutional rights by failing to process or failing to timely process his grievances. He also claims that Defendants violated SCDC policies in the way that they processed (or did not process) his grievances. Defendants contend that prison officials responded to Plaintiff's grievance regarding the confiscation of his Walkman. The grievance was denied and Plaintiff filed a Step 2 grievance which remains pending. Additionally, Defendants argue that Plaintiff has no constitutionally protected right to a grievance procedure.

Plaintiff fails to show a constitutional violation concerning the processing of his grievances or access to the grievance system. Access to administrative remedies is not itself a constitutionally protected right. See Adams v. Rice, 40 F.3d 72 (4th Cir.1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). Further, allegations that Defendants did not follow SCDC policies or procedures, standing

8

alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

    4.    Suspension of Privileges

Defendants argue that Plaintiff received a suspension of his privileges (telephone, visitation, and canteen) for 360 days because he was convicted of possession of a cell phone. They argue that this loss of privileges is within the SCDC sentencing guidelines and was proper. Additionally, Defendants argue that the loss of these privileges does not warrant due process protection.

As discussed above, Plaintiff fails to show that he exhausted his available administrative remedies as to his claim that the suspension of his privileges was wrongly extended. Plaintiff argues that the Defendants imposed a loss of privileges consecutive to his term of disciplinary detention in violation of SCDC policy. The policy which Plaintiff points to in support of his argument, however states that for a level one disciplinary offense (which includes possession of a cell phone), there were to be "[n]o privileges during Term of Disciplinary Detention **and an additional** mandatory 180 days **after** Disciplinary Detention." Plaintiff's Ex. M-2 (emphasis added).

Further, Plaintiff fails to show that he has a protected liberty interest in making phone calls. See U.S. v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr.10, 1996)(no constitutional right to the use of a telephone in prison); Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995)[Table]("The denial of telephone privileges for ten days is not a matter of constitutional dimension."), cert. denied,

517 U.S. 1111 (1996); May v. Baldwin, 895 F. Supp. 1398, 1409 (D.Ore. 1995)(brief suspension of television and telephone privilege does not amount to constitutional violation), aff'd, 109 F.3d 557 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997).  Prisoners do not have an affirmative constitutional right to visitation.  White v. Keller, 438 F.Supp. 110, 115 (D.Md.1977)(but leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), aff'd, 588 F.2d 913 (4th Cir.1978); see also Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989) (finding no right to visitation guaranteed by the Due Process Clause).  Canteen access is also not a protected liberty interest. See, e.g., Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997)(holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding); Bennett v. Cannon, No. 2:05-2634-GRA, 2006 WL 2345983, at *2 (D.S.C. Aug.10, 2006) ("[t]here is simply no freestanding constitutional right to canteen privileges at all").

     5.     Retaliation

Plaintiff appears to allege that Defendants retaliated against him for filing an earlier grievance and lawsuit by taking away his privileges and failing to properly process his grievances.[6]  Defendant contend they did not conspire or retaliate to violate Plaintiff's constitutional rights.

Bare assertions of retaliation do not establish a claim of constitutional dimensions.  See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995).  In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the

---

[6] In his opposition memorandum, Plaintiff claims that Stonebreaker retaliated against him because Plaintiff was found "not guilty" on a disciplinary charge in which Stonebreaker was the charging officer.  Plaintiff's Opp. Mem. at 4.  Even if this claim is properly before the court, Stonebreaker is not a party to this action.

10

exercise of his constitutional rights.  Id. at 75.  "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'"  Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

Plaintiff fails to show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights, as discussed in connection with Plaintiff's claims concerning grievances and privileges above.  Further, Plaintiff has only provided his bare assertions that the alleged unconstitutional actions were taken because of his filing of a lawsuit and/or grievances.

6. Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity.  When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 20) be **granted**.

*[signature]*

Joseph R. McCrorey
United States Magistrate Judge

June 24, 2011
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).